Counsel, you may proceed. Thank you, Your Honor. Good morning. May it please the Court, Counsel. We have a number of... Would you introduce yourself for the record, please? I'm sorry. Chris Kinmanoff with Appellant Dino Sisneros. There are a number of issues, obviously, that are raised in the appellant's brief and have been argued here. The first point that I would like to make is that if indictments mean anything, then the indictment is the document that is the charging document that must be stuck to. And in this particular case, the defendant essentially established, the appellant in this case, Mr. Sisneros, at trial established that the allegations that the government made in the indictment were just simply not true. Because the allegations that were made in the indictment was that Mr. Sisneros obtained money through loans by representations that he would use the money for real estate transactions. Counsel, you can handle your case however you want. That one's not going to fly with me, but I do have some problems with the inextricably intertwined issue, the confusion of the two possible crimes. Can you, at least from my perspective, can you focus on that? That's going to be more helpful to you than the other one would. I would say that's good advice, Counsel. And I was making the one point because I'm so passionate about the indictment, but I was getting... That was the second one, and that's probably the one that we'll spend most of the time on. You were getting going. We could see that. Right. Counsel, let me focus even more. In your brief, you refer to testimony from Special Agent Flick that you believe to be improper, in which he's describing the cashback mortgage scheme in derogatory terms. Are there any other witnesses who testify to that same effect? Well, are you saying to use those terms, or were there other witnesses that testified to the acts themselves? Let's talk about first other witnesses who testified to the cashback mortgage scheme. The term? No, no, other witnesses who presented testimony regarding the other indictment, the cashback mortgage scheme. Well, there were witnesses that testified, for example, about HUD-1 forms. There were witnesses, you know, escrow officers, and there was those individuals that testified about some of the facts that were used in order to make that statement. Do you understand what I'm saying? Were these witnesses who were testifying as to the tracing of the proceeds from the loan fraud, or were these witnesses who were testifying in a way that portrayed the cashback mortgage scheme in illegal terms? There were – for sure there was at least one other witness that was asked about HUD-1 forms and closing statements. And so they asked that witness some questions about was this proper for them to take money, essentially, let's say the gift money. All right? Then you also had the witness who was the one witness who specifically said that I was the one that they approached and asked to, you know, deposit the money and to say that this money was a gift. So there were a lot – I mean, actually, I think we say in our brief that over half of the witnesses, well more than half of the time, substantially more than half of the exhibits were all evidence that were directed toward the other acts. By far overwhelmed the actual issues of the case. Is there a distinction between the government tracing the proceeds from the loan fraud scheme and indictment to purchases of the houses and the cashback mortgage scheme, or does it go beyond that? I'm not sure I understand your question. Well, in the indictment, they were charged with the loan fraud. As I understand it, there were witnesses who testified that rather than investing these funds in real estate ventures, Mr. Cisneros, in fact, used some of the money as part of these purchases in the cashback mortgage scheme to purchase a number of houses. Did the government witnesses simply trace that – the funds from the borrowers, the victims in the indictment, or did the government do more and try to pollute the jury in terms of the nature of the first – the cashback mortgage scheme? Well, yes. I mean, I believe that the second is absolutely the case, and I was going to actually use a couple of examples. I wish you would. Because the reality is, is that the government did not use this evidence for anything that it said that it did. And let me try to work through this with you, because as I was thinking about this, it seems somewhat complicated and complex. But ask yourself the question, why did the government use this evidence? So let me give you a hypothetical. Suppose that I came to you and said, could I borrow some money from you to start a distribution business? And you said, sure. And you handed me some money, and you – I then went and bought some dope, some illegal drugs, and I started distributing them. All right? Now, would it have been a fraud? No, because I did exactly what I said that I intended to do. Right? It may be illegal. So the point is, is that – You're going back to your original point, right? Right. The point – not to the indictment issue, no. I'm going to this issue about why they're using the evidence. Because the reason that they wanted to use the evidence was, when you use other act evidence, it's other act evidence. It's the act that is important. And I think – if you've had a chance to read it, I tried to get into colloquy with the district court judge saying, judge, you can't let them use this term, cashback mortgage fraud, because that's not the issue in the case. That was a separate conspiracy, was it not? Well, it – this gets kind of – it's not actually – Or a separate operation and a separate charge. Well, it's existing right now. We're still pending trial in a case that – there's wire fraud cases, but it's during mortgage fraud. And the question is whether the trial judge fulfilled his duty to examine the evidence before it was admitted under Rule 403, right? That's one of the issues. And the Curtis Waters standard as well as McElmurry. McElmurry, right. That's correct. Elaborate on that. Well, I think that those cases have progressed to the McElmurry point to where McElmurry says, no, you have to look specifically at what this evidence is. You have to read – now, granted – Now, did that happen in this case? No. No. Now, understand – I mean, I will concede that what you're talking about in two of those cases were this child pornography, and so you could see the letter that was written by him, et cetera. You're talking about literally hundreds of – well, you're talking about tens of thousands of pages of documents that the government used in this case in order to prove those allegations. What does Curtin mean, then, when it said that the court was to, in quotes, read every word, in quotes? I think – So these are friendly questions, in case you didn't understand that. I do. I do understand that. But my answer is I take the words for what they mean. So that's what I say. You mean read every word means read every word? I can't interpret that any other way. But is it – obviously, there's a – some of the cases suggest there's a harmlessness, if you will, exculpation. But do you view that as more of a structural error as opposed to something that could be subject to harmless error? In other words, if the totality of the evidence presented is such, even if the district court doesn't read every word, is that still okay to go forward and convict your client? Well, I guess my answer would be it's not okay because the judge isn't doing their job. But I suppose, as a legal standpoint, the – we address that in our brief, and we say that, first of all, the government doesn't even attempt to do that in this particular case. Okay, but answer my question. Is there a harmlessness standard that goes along with Curtin and the read every word aspect? I mean, I have to be honest about it. Certainly, there would be. I mean, you know, if you then looked at it afterwards and you said that, look, I get it, but it's not harmless. I mean, if that – if what we're trying to do is justice here, and we're not trying to have a rule that says that, you know, you have to dot every I and cross every T. I understand that. This is what we have to do all the time is look at these words. And so what I want to be sure I understand is this. Are you confirming that from the perspective of the defense, that even if the district judge did not, in quotes, read every word, in quote, that if the quantum of evidence was such that it was overwhelming or substantial, that your client could nonetheless be convicted? No, I'm not saying that. Okay, what are you saying? Because what you're missing is the fact of the potential prejudicial value of the evidence itself. So you still have to examine the evidence that would have been – or that was erroneously admitted. But isn't that the whole point of reading every word, so the Court can make a 404B analysis? That is the point. That's the reason why the Court said what it said. Okay, so that's what I'm asking you is, if the Court didn't do that here, and I don't know whether my colleagues had better luck than I did, but I couldn't find in the record that the district court had done this. Now, maybe it did, but I don't know. If it didn't, let's assume for a moment that it did not, are we to make our own determination based upon the totality of the other evidence? What's the standard we use to determine whether the Court's failure to at least record its reading every word or say something about it, is that enough for us to override any problem with the 404B analysis? I guess I would say that the progression of these cases up until that McMurray case or whatever it is, the progression of them would seem to me to say, you know, the Court has finally said, no, we're done. We're done doing that. Because what we're saying is, because what it did is it progressed to the point where eventually it said, no, what we meant when we said read every word was read every word. That's what I think that ultimately that case said. And that was the third case, and I think the progression of the three. It was the Curtin case, the Waters case, and then that McMurray case. And I think that's finally what they said. I mean, they said, no, we're not going to keep doing this. Do your job and read through the stuff. I mean, in the end you're saying that McMurray says there is no harmlessness standard. I'd have to go back. I think what it said is, no, read every word. We meant what we said. I get that. But if the Court didn't, what do we make of that? Is that fatal to the government's case for purposes of the analysis, or do we look to determine whether there was harmless error in the Court's failure to follow McMurray and the previous cases? Well, I think that I argue, I think we argue in our brief. What are you arguing today? Well, I, the government argued that there is that, that's the standard in what our response was. But the government, you have to do things then in order to allow the Court to do that. So I guess that what I'm saying is, is that that's, I understand your question, but that's not really, we don't get to that question. Well, I do get to it. And I want to find out what you're thinking, what it is. Is there a harmlessness standard? And what do we, what is the, what's the standard we use to determine whether it's harmless? And if I could follow up on that same question, was there harm in allowing the admission of this evidence in this case? Well, absolutely. And I think that we spend Then would you identify it? Because I think that there's a couple of other issues that kind of talk about this. I think that ultimately what happened is that because the evidence absolutely showed that Mr. Cisneros used the money for, substantially all the money for real estate transactions, that the only conclusion that you can come to is, the only way the jury could possibly even come to the decision that they came to was that they were looking at this other evidence and they were basing their decision based upon the, and by the way, it's not the actual acts. It's the characterization of the acts. It's they based their decision based upon how the government characterized the acts, which is the second point I wanted to get to to answer your question. Because the reality is that when you're talking about other act evidence, you're talking about the acts. And that's why I tried to engage the district court judge and to say, judge, listen, if what we're talking about is acts, that even if you could allow this, which I don't think the judge ever properly decided if it was inextricably intertwined or bad act, I mean, that's all set forth in our briefs. But let me give you an example because this is kind of what I was trying to tell the judge. If, for example, you're going to use other act evidence to establish identity of a robber and you put on evidence that this individual had pled guilty to a previous robbery where he had gone in with a very distinctive polka dot bandana, so that what we're trying to do now is to prove identity. So now we bring in this. We bring in this individual went into the convenience store with a gun and he had a very distinctive polka dot bandana on, right? It's the acts that are admissible to prove what you want to prove. In this case, is there any doubt that the government could care less about the acts? Because the acts disprove what their allegation in the indictment was. Okay. Well, say all of that's true. And from a law school perspective, that's probably kind of an interesting question. But I'd be interested to know your answer to my colleague's question. In this specific case, discuss harmlessness. What was the harm versus what was harmless about it in this case? My answer was, and it still is, the only possible way that the jury could have come to the conclusion that they could have come to was to not focus on the allegations in the indictment, but to focus on this other evidence. And the reason is because the prosecution was improperly allowed to characterize the evidence. Characterize it. Because the evidence was, here's what the allegation in the indictment is. Where in the record does it say that? What? Where did the prosecution improperly characterize the evidence? It's all over the record. Give me a cite or two. Where are you talking about? Well, I don't know the numbers, but when he used the term cashback mortgage fraud, straw buyer, all of the terms, we set forth a number of those terms. Because here's the point. I wasn't trying to defend against whether or not there was a cashback mortgage fraud or a straw buyer, because, in fact, there was not. And I will tell you it maintains our position it was not. And we intend to prove that in June when we go to trial. What happened was is that they were allowed to use the facts. And if you think, just think about it. The indictment says, use the money for real estate. Now, why would this government come in and say, yeah, he used the money for real estate? It's contrary to what their allegation in the indictment is. They didn't want to do that. That's what the act was. What they wanted to do was to say, he used the money for real estate, but we call it a cashback mortgage fraud. We call it a straw buyer. We call it lie, lie, lie, lie, lie. Because that's what they wanted to call it. But that's impermissible because it's the act that's important, not the characterization of the act. So, I think. Let me understand what happened. The government filed a motion to admit the evidence, and there were a couple offers of proof. And the district court stated it would review it, maybe hold a hearing. I didn't see anything in the record showing that hearing happened. You eventually filed a motion to eliminate the court, denied as untimely. What was the gap in time between the court's discussion about having a hearing and your filing of the motion to eliminate? Well, I think it was within a couple of weeks. Because, actually, I asked a number of times to bring this issue up so that we could properly address this issue. I asked it on multiple occasions. But you have to keep in mind, I was the second counsel, and the original issue was decided before I came and got involved in the case. So it was only within a couple of weeks. Because if you recall, the judge at one point said, well, we can try to bring this up, but I'm in trial next week. And so it's going to be hard for me to bring it up. And I think the trial started the week after that. That's why we didn't have time to do it. Counsel, you reserve your time? Yes. Yes, very well. We'll hear from the government. Good morning, Your Honors. Erica McCallum, appearing on behalf of the United States. I'm here from Tucson in the District of Arizona. You've asked a number of questions today that I'd like to try to address. Turning first to the Curtin case, the Curtin-Waters line of cases, one of your questions was whether or not there is a harmlessness test. And if you look at the McElmurry case, which is from 2015, in that case, one of the problems was that the government did not address the Curtin case or claim that there was any harmlessness. That's different than here on page 68 of my brief. I do say that this was harmless. Counsel, I thought your position was there was no error by the district courts. There's no need to address harmlessness. I did include a harmlessness argument at the end of my brief. But I do think that this isn't an issue. And if I can just explain, the harmlessness test is whether it's more probable or not that the ‑‑ But before you get to that, I assume then you're implicitly conceding that the judge did not review every word of this controversial admission of evidence. The judge did not review the 50-some-thousand pages of disclosure in the case. That is true. So I think it is fair to say she did not review every word. However, if you look at ‑‑ Technically, there is a 404B violation. Now we're talking about whether that can be overcome by harmlessness. Not exactly. I was just answering your question as to whether or not there is a harmlessness test. And that's in footnote 49 of the McElmurry case. No, but I'm talking about where we are in our discussion here. Yes. The government is conceding, as it must, that the government ‑‑ that the judge did not review the 50,000 pages. And now the question is, was 404A and 404B complied with? Your Honor, what I'm not conceding is that it's necessary for the court to review every single word of the proffered evidence. But doesn't that what Curtin and McElmurry and Waters all say? Those cases involve specific circumstances where the defense objected to a specific piece of evidence. Now, in Curtin and in Waters, we're talking ‑‑ there's sort of a First Amendment consideration there in that we're talking about writings. Or actually, the defendant in those cases, reading preferences. Or reading materials. For example, Curtin had to do with this really pejorative, prurient story involving a child and intimate conduct with an animal that the judge did not read. And that, the court held, should not have been admitted. It was overly prejudicial. Waters had to do with anarchist articles. The third case, McElmurry, had to do with a defendant's interview from a prior conviction. However, there is another case, which is major from 2012. And that case says that careful review of potential prejudice may be based on counsel's representations and the same considerations whether or not it's cumulative. So, no, this circuit does not say that there's a blanket rule that the court has to basically have a trial before the trial to read every single word of potential 404B material. And in addition, in this case, we're not talking about 404B material. Maybe I am recalling Curtin incorrectly, but didn't the court specifically state you couldn't rely on a PSR in that case? Your Honor, I don't recall. If my recollection is correct, what's the difference between that and a counsel's statement? In the Curtin case? Yeah. I'm not sure how the PSR played into the Curtin case. No, I mean, the point is that the district judge didn't read every word, but looked at some representations. You're saying, if it's done by counsel, I'm asking, I think somebody said something about PSR on one of the cases. But in any event, in neither case did the district judge look at every word, and in Curtin they used that terminology. I gather you're distinguishing Curtin, Waters, and McElmurry by saying, well, they had little short things to read, it was no big deal, easy for them to do it, and that was the essence of the whole thing. But here we've got thousands and thousands of pages, so therefore it's distinguishable on that basis. Is that right? No, I think it's distinguishable for two reasons. One reason is that in those cases, the defense made a specific objection to specific pieces of evidence. Whereas here, the defendant throughout the case has said, this other information, the cashback mortgage fraud scheme is relevant, and it's admissible, but I'm objecting to the scope of it. And there's only one particular piece of that evidence that I am objecting to, and that's the Villalba lease. But otherwise, it was just a general blanket objection to the quantity and to the labeling. And in addition to that, the mortgage fraud scheme was the subject of a separate indictment. Yes. May I just answer one more point as far as how I'm distinguishing Curtin and Waters? That is also, in those cases, the judge made a definitive pretrial ruling, this is coming in. Whereas in this case, our judge looked at the matter 14 times and made rulings, four pretrial rulings, including a hearing on March 22nd of 2013 where she said this is, she said verbally, this is intrinsic, inextricably intertwined evidence, it's coming in, but whether 403 balancing weighs more heavily toward exclusion, I will continue to look at throughout the trial. Ten times during the trial, she re-evaluated that. But isn't there a distinction between the government simply tracing the proceeds of the loan money, saying it was used to buy a house, versus it was used to buy a house with a straw purchaser that was part of a cashback mortgage scheme? Isn't that the distinction that the appellant argues applies here? Well, the issue with that is that the defense here was I have a legitimate real estate portfolio, I'm a legitimate real estate investor, and I was, I had no intent to defraud these individuals. We're talking about evidence presented in your case in chief before the defense has raised that argument. Well, from... Can you present this evidence in a fashion that impugns the motives of the defendant? The jury's entitled to a coherent and complete story, a picture of the case. And the defendant's intent, specific intent, obviously, is an element of the fraud scheme. So the government had the burden of proving that he intended to defraud these individuals. Let me ask you along that line. This is what we'll call the cashback scheme, not a word of it, nothing related to it. Could you have convicted the defendant in this case? That would have been difficult because it would have been difficult to prove intent. As the district court ruled during and after trial, that intrinsic evidence was necessary because it was highly relevant to intent. This is important because part of the standard of this whole thing is how important it was. And in this case, it seems like you're saying, yeah, the jury, they had to take this into account because if they had done it, they probably wouldn't have convicted. Is that a fair statement? I think it would have been unfair to the government in its presentation of the case for those who have carved out certain pieces from the full context of the case. I really feel sorry for the government, but I want you to tell me, though, could the government have won the case if this had not been included, anything related to the cashback mortgage? That's a very broad category. It would have been very, very difficult, wouldn't it? It's difficult for me to answer that question. If the government were limited to hypothetically the defendant borrowed money from these individuals and was not entitled to show that he lied about whether he intended to pay it back and lied about how he was going to use it and lied about the high returns that he promised, then the government essentially would have not been able to present a complete case. So in other words, without this evidence, the indictment could not have been proven? That's a very difficult question to answer. But you understand why I'm asking it. Well, I think what we have to bear in mind here is that this was and the defendant conceded it at trial. First day of trial said... Conceded what? That this was intrinsic evidence, that this was evidence that was part and parcel of the case. Which the government has a right to show. What do you cite in the record in answer to Judge O'Scannon's question? What in the record would you cite that the defendant conceded that this, in quotes, was part of this conspiracy? The first day of trial, beginning on page 93 of the transcript, defense counsel said, court correctly ruled the inextricably intertwined acts are relevant. He said, I do not dispute, and I'm skipping a little bit, I do not dispute anything that would show the flow of these funds is clearly relevant. It's inextricably intertwined. The issue is bad act. I have no objection whatsoever with anything that traces the funds. And then he said, the only issue I have is with this viabilis. Counsel, isn't there a distinction, though, if you say the defendant used the funds for his personal use? You present evidence of that effect. Versus present evidence the defendant used it for his personal use to purchase cocaine or something shocking like that. Isn't that what we have here? Not only did the defendant use it for his personal use, but it was a cashback mortgage fraud scheme. So the tracing is okay, but when you characterize the tracing, and it's the subject of a separate indictment in terms that highlight its alleged illegality, isn't that going beyond just allowing the tracing of the funds? Well, I understand you're asking whether the characterization or the labeling of it is 403. That's a problem, and the district judge did address that and say that. Where? If you could give me just a moment. On page 11 of the seventh day of trial, the court ruled that using the term mortgage fraud was okay. Where is this in the ER? Oh, gosh. I don't have that noted down, but it is part of the trial record. And when did this occur? Where in the trial? Okay. If you look at page 38 of my answering brief, or page 11 on the seventh day of trial, the district judge ruled it's okay to call it mortgage fraud so long as the jury could reasonably find by a preponderance that the acts occurred and that the defendant was the actor. And then if we look at the Huddleston case, there's no requirement for preliminary finding. That's not really relevant to this. But, yes, the judge was sensitive to that objection and said, you know, if you were referring to some other act by the defendant, say he had committed an armed robbery, you could call it an armed robbery, even if it wasn't charged in this case. There's a practical issue, too, which is the defense argues that there's a problem with the jury instructions, because there was a risk that the jury confused the two schemes and convicted the defendant. For the mortgage fraud scheme, as opposed to the investment fraud scheme. Now, obviously, that was clarified during the jury instructions, the verdict forms, closing arguments by both parties. Speaking of which, I want to switch before you run out of time on this thing. What's your comment about the unanimity instruction? Under Lafayette, I'm a little troubled by the fact that since you had this, these two things that you said, these two things that were so, in quotes, intricately intertwined, that a unanimity instruction was not given. Well, the LaPierre case is a good example, and that's the subject of my recent 28-J letter, where the indictment charged an overarching conspiracy, and then at trial two consecutive conspiracies were proven. The government admitted it, the district court said, I see two conspiracies, and that's a case where there should have been a specific instruction, because there was a genuine risk of confusion. But here, and in part because there was a distinction made throughout the trial, there's the investment fraud with the private investors, and then there's the, and the label was used, mortgage fraud or cashback scheme, which was the scheme that involved banks as victims, that there was a distinction in the jury's mind. And again, this was also, juries presumed to follow instructions, and it was instructed, it had a general unanimity instruction, and the... But not a specific one here, though. But there was no, it was not asked for. I thought it was. No, the defense did not ask for it, and they did not object to the instruction that was given. And the verdict form specified each, for each count, the victim's name, date, dollar amount of the transaction. So it's plain error, if we get into this, it's plain error? Yes. And also, during their closings, both defense and the government were very clear. They read, re-read portions of the indictment describing that investment fraud scheme.  So in part, that labeling was necessary in order to keep them separate in the jury's mind. There were no questions, there was no indication by the jury that there was any risk of confusion between the two schemes. When the judge, Judge Jorgensen, made the ruling with respect to allowing the references to mortgage fraud, was she making a ruling with respect to 4043 and 404... At the time of that specific ruling, I believe so. And again, nearly every day of the trial, that issue was raised. And she said, and she did exclude some evidence and said, this is too far from the intrinsic nature of what we're looking at here. But she never looked at the evidence that was being introduced? Prior to trial? Well, she received that 18-page notice by the government, which was very detailed and included... It also included, like, about a three-page graph of all, in specific detail, the transactions that the government proposed to introduce. And again, there were only five transactions that the government brought in. They were all tied in time and by the flow of money to these specific victims. And that's in contrast to this other case that's out there, where there's an indictment that alleges approximately, I think, 18 transactions and a number of different defendants. So that really is a much bigger scheme, and the government was careful to limit, as best it could, what it did introduce about that scheme. In addition, during trial, when the government said, we'd like to introduce another PANITOC transaction, we'd like to introduce evidence that the defendant never filed tax returns, the judge did a 404B analysis and a 403 analysis and said, no, that's not coming in. We'd like to introduce a second Villalba lease. Nope, not coming in. So the government was asking, and the court was saying, no, we're going to keep this limited, and it was limited to what was in that 18-page notice that's CR 52. If there are no further questions, I would submit my briefs and ask you to affirm. Thank you, counsel. Mr. Kimenow, you have some reserve time. Thank you. If the allegation in the indictment was that you borrowed the money and didn't use it for real estate, and the evidence that the government wants to present is that you used it for real estate, do you think I would want that evidence? Of course. That demonstrates the problem with the government's position. It wasn't the evidence that they wanted. It was the spin that they wanted to put on the evidence, which, by the way, it's not a cashback mortgage fraud. I'd sit here and tell you right now it's not a cashback mortgage fraud. But I wasn't there to defend a cashback mortgage fraud. I was there to defend an allegation that said you represented that you were going to borrow money and spend it on real estate, and you borrowed money and spent it on your personal use. That's what this is about. What it's about is not the evidence. It's the spin that the government put on the evidence. And, yeah, the judge said you could do it. Why? Because I kept complaining and saying, Judge, this isn't right. You don't allow the conclusion that somebody committed a robbery to come in as other act evidence. You allow the act that the person did. So if you trace the money, fine, let them trace the money and let them show that the money was used to invest in real estate. Why wouldn't I want that? So what the government's position, I guess, now is that the distinction between the case and this is this. If we give them the specific evidence ahead of time so that they have an obligation or they have an opportunity to object, then the judge has to do the proper analysis. But if we don't give them the evidence ahead of time so that they don't, we don't give the judge the evidence ahead of time so that they, and the judge doesn't make a specific ruling about any particular piece of evidence, then since the defense doesn't have an obligation or opportunity to make a specific objection to a specific piece of evidence, now the rule doesn't apply. Now, what about the innuendo, at least, if not a formal statement, that your side waived these objections? No. What I said was it was relevant because it was. The trial counsel apparently, if you heard opposing counsel's comment, she, at least I heard her say that your side waived any of these objectives, objections early on. The first day of trial and the seventh day of trial? No. That's what I just addressed. What I said was, I was the trial counsel. Okay? What I said was that, yeah, it's inextricable. I agree that evidence is inextricably intertwined because if the argument is, if the allegation is he didn't use the money to invest in real estate and, in fact, he did use the money to invest in real estate, how is that not relevant? See, it's the characterization of it that this transaction, which I never tried to prove or disprove, I said, yeah, the facts, the acts occurred. He took the money. He invested in real estate. Doesn't that disprove the indictment? It wasn't about that. It was about the spin. All right. Very well. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, M. Smith, Morris